CITY OF NEW ORLEANS THROUGH JOHN THOMAS on 06/24/2022

```
           UNITED STATES DISTRICT COURT

          EASTERN DISTRICT OF LOUISIANA

*****************************************************

KIRA GODCHAUX-BOUDREAUX    CASE NO.: 21-1525

       Plaintiff

Versus                     SECTION: L
                           JUDGE ELDEN E. FALLON

CITY OF NEW ORLEANS,

       Defendant           MAGISTRATE: 3
                           JUDGE DANA M. DOUGLAS

*****************************************************
```

The Rule 30 (b)(6) deposition of THE CITY OF NEW ORLEANS POLICE DEPARTMENT, through its representative, JOHN THOMAS, taken on Friday, June 24, 2022, commencing at 12:02 p.m., via Zoom.

\* \* \*



EXHIBIT H

**Page 18**

1 sexual harassment, and retention. I'm
2 sorry. What did I say? Retaliation,
3 which has provisions in here. Do you
4 want us to e-mail this to you right now?
5 MR. SANGISETTY:
6     Yes.
7 MS. ROBINS:
8     Okay. You want to hold on for a
9 second?
10 MR. SANGISETTY:
11     Sure. Okay. I got it.
12 THE WITNESS:
13     You have it, Ravi?
14 MR. SANGISETTY:
15     I do have it. Yes.
16     (Multiple speakers.)
17 MR. SANGISETTY:
18     Okay. So this we'll identify for
19 this deposition as Exhibit D -- am I on
20 D?
21     (Exhibit D marked.)
22 MS. ROBINS:
23     Yes, you are.
24 BY MR. SANGISETTY:
25   Q. Okay. And let's also label as Exhibit E

**Page 19**

1 the e-mail from Mr. Thomas that he identified said
2 on 12/3/2020 as Exhibit E.
3     So Mr. Thomas, we were just talking
4 about --
5     (Exhibit E marked.)
6   A. I misspoke, Mr. Ravi, if I can
7 interject. Instead of paragraph 14 it's paragraph
8 24 that I referenced.
9   Q. Okay. Paragraph 24 says, "The public
10 integrity bureau shall separately track all
11 complaints of harassment, discrimination, or
12 retaliation and maintain all files of such
13 complaints. All files concerning complaints of
14 inappropriate behavior shall be kept in such a
15 manner as to allow the files to be accessed by the
16 name of the accused and the name of the
17 complaining employee. Access to the file shall be
18 restricted to supervisory individuals conducting
19 pertinent police business."
20     So this reference to the public
21 integrity bureau, is that part of the City of New
22 Orleans and -- City of New Orleans and New Orleans
23 Police Department?
24   A. Yes.
25   Q. So given Ms. Godchaux-Boudreaux's

**Page 20**

1 complaints or -- I'm sorry -- the complaint
2 regarding Ms. Godchaux-Boudreaux's harassment,
3 would it be correct to say that the public
4 integrity bureau maintains a separate file that
5 would be related to those complaints?
6   A. I don't know. What you mean "a separate
7 file"? It's all one file. We track it
8 separately, but they maintain all the files within
9 internal affairs, the public integrity bureau.
10   Q. Well, it says, "The public integrity
11 shall separately track" --
12   A. Yes.
13   Q. -- "all complaints of harassment and
14 maintain all files of such complaints."
15   A. Yes. They maintain files of all
16 complaints, but they separately track the
17 harassment discrimination complaints. But they
18 maintain files of all complaints that are lodged
19 against law enforcement personnel in the public
20 integrity bureau.
21   Q. So are you aware that in this
22 circumstance a coworker or someone, some employee
23 in the New Orleans Police Department made a
24 complaint that Sergeant Taillon sexually harassed
25 or assaulted Ms. Kira Godchaux-Boudreaux, the

**Page 21**

1 plaintiff in this case?
2   A. I heard about it. I never seen the
3 complaint though.
4   Q. So as the 30(b)(6) designee, how would
5 that complaint and documents related to that
6 complaint be tracked separately in accordance with
7 paragraph 24 of this policy?
8     (In sotto attorney/client conversation.)
9   A. That's a PIB question how they maintain
10 it separately, and where they actually keep those
11 files, I'm not sure.
12 MS. ROBINS:
13     If I can interject, subject area
14 number 4 says, "Defendant's document
15 retention policy." So what the witness
16 has testified to is that was in the
17 workplace discrimination policy and
18 specifies that the public integrity
19 bureau, which has all those conduct
20 investigations, will maintain all
21 complaints of harassment.
22     The question is how do you retain
23 them. The additional information about
24 the tracking, I think exceeds the scope
25 of the area, but if you want to ask

Page 46

1  Q.  ADD.  Sometime around December 20, 2020,
2 December 2020 you were told she could be released
3 to full-duty.
4  A.  Yeah.  Captain Albert brought it to my
5 attention.
6  Q.  Captain Albert.  Okay.
7      And so where did you place her?  You
8 said the fourth district?
9  A.  I transferred her back to the fourth
10 district where she came from on the transfer
11 sheet.
12  Q.  Okay.  So was the fourth district
13 different from where she was in June of 2020?
14  A.  Yes.
15  Q.  Yes?
16  A.  She was in APR in June of 2020.
17  Q.  Okay.  And at that point in December
18 2021 was she then eligible for overtime and detail
19 work?
20  A.  Yes, because she was full duty.
21  Q.  Just so it's clear for the record, I
22 mean, overtime is something that would be
23 considered -- an employee would want that because
24 you get time-and-a-half, would that -- is that
25 correct -- because you make more?

Page 47

1  A.  Yes, time-and-a-half, yes.
2  Q.  And then detail work is something that
3 is desired because it, you know, pays well, right?
4  A.  Depending on what you call "well."
5  Q.  Well, you tell me then.  I've never done
6 it, so --
7  A.  It pays, I think, $29 an hour, which
8 is -- I don't know if you classify it as "well,"
9 but, you know, $29 an hour for tier one.  It goes
10 up to a tier two, tier three, tier four.  It just
11 depends on what tier that that detail falls on.
12  Q.  And is the detail work assigned by
13 anyone in particular?
14  A.  Yes, the office of secondary employment.
15  Q.  And who was the person at the office of
16 secondary employment that would decide who gets
17 the detail work around this time, December or
18 January 2020?
19  A.  I'm not sure.  It's a separate city
20 agency.  They have multiple coordinators, just
21 depending on what the detail is.  Some of them
22 have the Superdome.  Some of them have small
23 events.  So it just depends.  They put into a --
24 they put the job into the computer system, you
25 sign up for that job, and they'll award the job to

Page 48

1 you.  But I'm not sure, because it's a separate
2 city agency from the police department.
3  Q.  So when we say "tier one, two, three,
4 and four," what's the Superdome work?  Is that
5 tier four or tier one?
6  A.  Tier one.
7  Q.  Okay.  So is that the most desirable or
8 pays the most or pays the least?
9  A.  It just depends when you say
10 "desirable."  I mean, I worked the Superdome
11 because I was able to pay under Social Security,
12 which police officers don't pay Social Security.
13 So for me to get my quarters, I worked the
14 Superdome.  It's a little less money than some of
15 the other ones.
16      So it's just whatever your desire is.
17 If you want to stand in a bank.  Some people don't
18 feel comfortable in the bank because they feel
19 it's high risk.  Some people don't want to go to
20 Walmart.  So it just depends on what's desirable
21 to whatever that officer worked.
22  Q.  Okay.  So how are the tiers then
23 classified?  What is the criteria to call
24 something a tier four versus a tier one?
25  A.  Availability of officers, how many you

Page 49

1 need, the event itself.  Some people won't work a
2 second line or something like that for $29 an
3 hour, so they organize and sometimes have to raise
4 the pay to tier two, tier three, or tier four to
5 get workers for availability of officers and whose
6 able to work detail.  It's all voluntary.
7  Q.  Okay.  So back to the plaintiff, then.
8 Do you know if her eligibility for overtime or
9 detail work -- let me ask you this first.  I'm
10 going to start over a little bit here.
11      We talked about overtime and detail
12 work.  Are there any other benefits that would
13 be -- a person would be ineligible for because
14 they're on limited-duty capacity?
15  A.  Outside employment, police officer
16 secondary employment, and overtime.
17  Q.  Okay.  We talked about overtime, and we
18 talked about detail work.  Is there other things,
19 other benefits that would be -- that would not be
20 eligible for because of limited-duty capacity?
21  A.  I don't know.  What other benefits are
22 you talking about?  I'm not --
23  Q.  It's a question.
24  A.  There is no other benefits.
25  Q.  Okay.  Fair enough.  That's all I wanted

**Page 50**

1 to know.
2   A.  Okay.
3   Q.  In January of 2020, do you know how long
4 the plaintiff remained eligible for the benefits
5 that we discussed, the overtime or detail work?
6       MS. ROBINS:
7           I'm going to object. I don't think
8       she said she -- he specified that she
9       wasn't eligible when she was in APR.
10      You said what else --
11      MR. SANGISETTY:
12          I'm sorry. Let --
13      MS. ROBINS:
14          Maybe I misunderstood your
15      question.
16      MR. SANGISETTY:
17          Yeah. Yeah. Yeah. Let me -- I'll
18      be more clear.
19 BY MR. SANGISETTY:
20  Q.  So I understand that in December of 2020
21 she returned to full-duty back to the fourth
22 district where then she began to be eligible for
23 overtime or detail work. Did that continue -- did
24 that remain the case for plaintiff through today,
25 or do you know?

**Page 51**

1   A.  I don't know. I retired in December. I
2 have no idea what her status is today.
3   Q.  So you retired in December of 2021?
4   A.  Yes.
5   Q.  Did the eligibility -- did plaintiff's
6 eligibilities or benefits change in 2021 that
7 you're aware of?
8   A.  Not that I'm aware of. As long as she
9 was full duty, she had the benefits of secondary
10 employment and overtime.
11  Q.  Were you aware that she went back on
12 worker's comp in July?
13  A.  No, I wasn't aware of that. And that
14 being said, she would not be eligible for the
15 details or overtime while she went back on
16 worker's comp.
17  Q.  So from January to, let's call it July,
18 do you know of any change in her status with
19 regards to eligibility for overtime or detail work
20 in 2021?
21      MS. ROBINS:
22          I think he's already answered that
23      question. He said she's eligible so
24      long as she's full duty, qualified.
25 BY MR. SANGISETTY:

**Page 52**

1   Q.  Right. But what I'm asking is are you
2 aware of any change, or do you know whether she
3 remained eligible?
4   A.  No, I don't.
5   Q.  I'm sorry. Say that again.
6   A.  No, I don't.
7   Q.  Okay. So after she was assigned to the
8 fourth -- the plaintiff was assigned to the fourth
9 district in December of 2020, do you know if she
10 was transferred anywhere else after?
11  A.  I think she was reassigned to
12 hit-and-run -- hit-and-run division.
13  Q.  When was that?
14  A.  I'm not sure when she went to
15 hit-and-run, but she was reassigned to hit-and-run
16 at some point after -- if I'm not mistaken, it was
17 after the complaint was made, Sergeant Taillon was
18 reassigned to the seventh district and that
19 eventually Kira Godchaux was reassigned to
20 hit-and-run traffic division.
21  Q.  Was that before or after you assigned
22 her to the fourth district?
23  A.  Before.
24  Q.  Okay. So sometime after the complaint
25 of harassment in June of 2020 she remained on

**Page 53**

1 limited duty capacity within the hit-and-run
2 division or department?
3   A.  From what I understand, she was still on
4 limited duty when she was sent over there because
5 she was -- they separated her out of APR unit, and
6 I think she was still on limited duty at that
7 point. And I later learned that she was
8 permanently released off of limited duty, came
9 back to full-duty, and that's when I sent her back
10 to the fourth district on the transfer list.
11  Q.  Did she remain at the fourth district
12 throughout 2021, do you know?
13  A.  I think she was reassigned to the
14 hit-and-run division.
15  Q.  Okay. So I'm sorry if I'm not
16 understanding you, but she went from -- it sounds
17 like you said in June of 2020 after she made the
18 complaint, she was moved to the hit-and-run
19 division or traffic department sometime after
20 that, and then when she became eligible for
21 full-duty, you assigned her to the fourth
22 district?
23  A.  Yes.
24  Q.  And then subsequent to that she was
25 moved back to hit-and-run?